# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, ) <br> ) <br> *Petitioners*, ) <br> ) <br> v. ) <br> ) <br> U.S. ENVIRONMENTAL ) <br> PROTECTION AGENCY, *et al.*, ) <br> ) <br> *Respondents*. ) | No. 17-60088 |

**INTERVENOR-RESPONDENT SIERRA CLUB'S RESPONSE IN SUPPORT OF EPA'S MOTION TO DISMISS OR TRANSFER**

Intervenor-Respondent Sierra Club respectfully submits this response in support of EPA's Motion to Dismiss or Transfer to the D.C. Circuit (Doc. 00513925836). Petitioners State of Texas, et al. and Luminant Generation Company LLC, et al. have filed challenges to the same agency action, 81 Fed. Reg. 89,870 (Dec. 13, 2016), in both the Fifth Circuit and the D.C. Circuit. Petitioners' D.C. Circuit suits are consolidated with four other cases, including one transferred from the 10th Circuit.[1] The plain text of the Clean Air Act and its legislative

---

[1] *State of Texas, et al., v. EPA, et al.*, No. 17-1053 (D.C. Cir. filed Feb. 13, 2017) (consolidated with *Luminant Generation Co., et al., v. EPA, et al.*, No. 17-1055 (D.C. Cir. filed Feb. 13, 2017); *Samuel Masias, et al., v. EPA, et al.*, No. 16-1314 (D.C. Cir. filed Sept. 9, 2016); *Sierra Club v. EPA, et al.*, No. 16-1318 (D.C. Cir. filed Sept. 12, 2016); *Kansas City Bd. of Pub. Utils. v. EPA*, No. 16-1384 (D.C.

history make clear that venue is proper only in the D.C. Circuit Court of Appeals. Review in the D.C. Circuit will also promote judicial economy and eliminate the risk of conflicting judgments.

## BACKGROUND

### I. Implementation of the $SO_2$ NAAQS

EPA promulgated its revised one-hour sulfur dioxide ("$SO_2$") National Ambient Air Quality Standard ("NAAQS") in June 2010,[2] thereby triggering mandatory statutory timetables for EPA to "designate" all areas of the country failing to comply with the 2010 standard. Specifically, EPA had a statutory obligation to issue designations for all areas of every state within three years of issuing the revised 2010 NAAQS for $SO_2$—or by 2013. 42 U.S.C. § 7407(d)(1)(A), (d)(1)(B)(i).

In August of 2013, EPA issued its first round of nonattainment designations for 29 areas in 16 states based on nearby monitor readings above the $SO_2$ NAAQS. *See* 78 Fed. Reg. 47,191 (Aug. 5, 2013) (effective Oct. 4, 2013). Because EPA failed to issue timely final designations for the remainder of the country, Sierra Club and another environmental organization filed a citizen suit under the Clean

---

Cir. filed Nov. 3, 2016) (transferred from 10th Circuit); and *Sierra Club v. EPA, et al.*, No. 16-1424 (D.C. Cir. filed Dec. 16, 2016)).
[2] Primary National Ambient Air Quality Standard for Sulfur Dioxide, 75 Fed. Reg. 35,520, 35,525 (June 22, 2010).

Air Act to compel the agency to fulfill its mandatory statutory duty. *Sierra Club v. McCarthy*, No. 3:13-cv-3953-SI (N.D. Cal. filed Aug. 26, 2013). As a result of a consent decree resolving that case, EPA was required to issue final designations for the areas meeting certain criteria—the areas with the largest sources of $SO_2$—by July 2, 2016. Consent Decree ¶ 1, *Sierra Club v. McCarthy*, No. 3:13-cv-3953-SI (N.D. Cal. Mar. 2, 2015), ECF No. 163 [hereinafter "Consent Decree"].

In March 2016, EPA proposed its second round of designations ("Round 2 Designations"), covering 66 areas in 24 states containing the largest sources of $SO_2$ pollution, including the four area designations in Texas that Petitioners challenge here. 81 Fed. Reg. 10,563 (Mar. 1, 2016). In July 2016, EPA issued its first set of "Round 2" $SO_2$ NAAQS area designations, as required by the Consent Decree. 81 Fed. Reg. 45,039 (July 12, 2016) ("Final Rule") (designating 61 areas in 24 states, including eight areas in Texas). Pursuant to agreed-upon modifications to the Consent Decree, EPA deferred designations for four areas in Texas surrounding the Big Brown, Martin Lake, Monticello, and Sandow power plants. *See* Joint Notice of Stipulated Extension of Consent Decree Deadline, *Sierra Club v. McCarthy*, No. 3:13-cv-3953-SI (N.D. Cal. Oct. 28, 2016), ECF No. 180. On December 13, 2016, and as part of the same "Round 2" rulemaking, EPA issued its final area designations for those four remaining areas of Texas. 81 Fed. Reg. 89,870 (Dec. 13, 2016) ("Supplemental Rule").

Collectively, the Final and Supplemental Rules set forth EPA's Round 2 Designations for the 2010 primary $SO_2$ NAAQS, covering 65 areas in 24 states. 81 Fed. Reg. 45,039; 81 Fed. Reg. 89,870. The Final and Supplemental Rules share the same March 2016 proposed rule and rulemaking docket (EPA-HQ-OAG-2014-0464). 81 Fed. Reg. at 89,875. They apply the same interpretations of the definitions for nonattainment, attainment, and unclassifiable under 42 U.S.C. § 7407(d)(1). *Id*. And they utilize the same five-factor test, analytical approach, and technical assessment considering available air quality modeling and monitoring data to establish air quality designations for each area. *Id.* at 89,871-73.

## II.   Judicial Review Under the Clean Air Act

The Clean Air Act "evinces a clear congressional intent" to centralize review in the D.C. Circuit of "matters on which national uniformity is desirable." *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (citation omitted). To that end, the Clean Air Act's judicial review provision apportions venue amongst the circuit courts based on the nature of EPA's action. Petitions for review of "nationally applicable regulations promulgated, or final action taken . . . may be filed *only* in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1) (emphasis added). Conversely, petitions for review of "locally or regionally applicable" actions "may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.* Finally, section

7607(b)(1) provides that even locally or regionally applicable actions must be filed in the D.C. Circuit if such actions are (1) "based on a determination of nationwide scope or effect" and (2) "if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id.*

## ARGUMENT

In promulgating the Round 2 Designations—*i.e.*, the Final and Supplemental Rules—EPA specifically found its action designating areas across the country as in attainment, nonattainment, or unclassifiable for the 2010 primary $SO_2$ NAAQS is both "nationally applicable" and "based on a determination of nationwide scope and effect for the purposes of section 307(b)(1)." 81 Fed. Reg. at 89,875; *id.* at 45,045. Although this Court has held that a circuit court makes its own determination as to the section 7607(b)(1) criteria, *see Texas v. EPA*, 829 F.3d 405, 420-21 (5th Cir. 2016), as discussed below, EPA's findings with respect to the Supplemental Rule are reasonable and should be upheld.

### I.  EPA's Supplemental Action Establishing Air Quality Designations Is Nationally Applicable

Although issued separately, the Final and Supplemental Rules form one common action for purposes of judicial review. Because such action promulgating the Round 2 Designations is "nationally applicable," under 42 U.S.C. § 7607(b)(1) petitions for review of such action "may be filed only in the United States Court of Appeals for the District of Columbia."

5

EPA's Round 2 Designation rules apply to 65 areas in 24 states. Such geographic scope alone renders the Designations nationally applicable. *See W. Va. Chamber of Commerce v. Browner*, 166 F.3d 336 (Table), 1998 WL 827315, at *7 (4th Cir. Dec. 1, 1998) ("An EPA rule need not span 'from sea to shining sea' to be nationally applicable."); *cf.* H.R. Rep. No. 95-294, at 323-24 (1977) (describing a determination of nationwide scope or effect as one "which has scope or effect beyond a single judicial circuit").

Further, the Final and Supplemental Rules employ a common interpretation of 42 U.S.C. § 7407(d)(1) terminology as well as the same five-factor test, analytical approach, and technical assessment in issuing each of the 65 area designations. 81 Fed. Reg. at 89,871-73, 89,875. The Final and Supplemental Rules are thus individually and collectively nationally applicable in this respect as well. *See Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015) ("To determine whether a final action is nationally applicable, [courts] 'need look only to the face of the rulemaking, rather than to its practical effects.'" (quoting *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 456 (D.C. Cir. 2013))).

Indeed, EPA's promulgation of the Round 2 Designations closely mirrors its promulgation of area designations for the 2006 fine particulate matter ("$PM_{2.5}$") NAAQS. 74 Fed. Reg. 58,688 (Nov. 13, 2009). In resultant litigation concerning the $PM_{2.5}$ area designations—where petitioners challenged EPA's nonattainment

designation for portions of just two Utah counties—the Tenth Circuit determined the designation rule was nationally applicable and as such transferred the petitions for review to the D.C. Circuit. *ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194 (10th Cir. 2011).

In so finding, the Tenth Circuit pointed to EPA's "appli[cation of] a uniform process and standard across the country" and determined "EPA's analytic rubric [was] a single interpretation of the Clean Air Act provision concerning areas that contribute to a nearby NAAQS violation." *Id.* at 1197-98; *see id.* at 1200 ("EPA's listing of the designations applied to each locality does not, as ATK suggests, constitute a mere amalgamation of numerous local actions into a single rule. Rather, EPA's Designations Rule constitutes its national interpretation of Clear Air Act mandates, and any challenge thereto belongs in the D.C. Circuit."). Because it is "[t]he nature of the regulation, not the challenge, [that] controls," ATK's narrow focus on one area designation in Utah did not and could not transform a national standard into a local rule suitable for review in a local circuit. *Id.* at 1198-99.[3]

---

[3] The Tenth Circuit rejected petitioners attempt to rely on *Western Oil & Gas Ass'n v. EPA*, 633 F.2d 803 (9th Cir. 1980) and *Madison Gas & Elec. Co. v. EPA*, 4 F.3d 529 (7th Cir. 1993)—two cases equally irrelevant here. *See ATK Launch Systems, Inc.*, 651 F.3d at 1198-99 ("Given that the face of the final rule declared itself regional in nature, and that the Ninth Circuit provided no analysis in support of its conclusion that the designations apply locally, *Western Oil & Gas* is of no help to ATK here."). In *Madison Gas*, the Seventh Circuit determined that a challenge to a "national program," if based on "an entirely local factor," may be heard in a

The Supplemental Rule likewise constitutes EPA's national interpretation of Clean Air Act mandates, and any challenge thereto must necessarily also be filed only in the D.C. Circuit. *See also W. Va. Chamber of Commerce v. Browner*, 166 F.3d 336 (Table), 1998 WL 827315, at *7 (4th Cir. Dec. 1, 1998) (finding Ozone Transport SIP Call nationally applicable due in part to "the common core of knowledge and analysis involved in formulating the rule, and the common legal interpretation advanced of section 110 of the Clean Air Act"). The narrow geographical focus of petitioners' challenge does not alter the national applicability of the Supplemental Rule.

## II. EPA's Supplemental Action Establishing Air Quality Designations Is Based On a Determination of Nationwide Scope and Effect

Even if the Court determines that the Supplemental Rule is not nationally applicable, venue nevertheless lies in the D.C. Circuit because (1) the

---

regional circuit. 4 F.3d at 530-31. However, as the Tenth Circuit points out, it is "[t]he nature of the regulation, not the challenge, [that] controls." *ATK Launch Systems, Inc.*, 651 F.3d at 1199 ("To the extent that *Madison Gas* suggests . . . that the manner in which a petitioner frames his challenge to a regulation may alter the court in which the suit belongs, that suggestion is inconsistent with the language of the Act's judicial review provision."). As discussed herein, the Round 2 Designations are (1) "nationally applicable," and (2) "based on a determination of nationwide scope and effect." Further, the Rules were designated as such when promulgated by EPA—unlike the Rules addressed in *Western Oil* and *Madison Gas*. *Compare* 81 Fed. Reg. at 89,875; *id.* at 45,045 (including both designations), *with* 44 Fed. Reg. 16,388 (Mar. 19, 1979); 58 Fed. Reg. 15,634 (Mar. 23, 1993) (including neither designation).

Supplemental Rule is based on a determination of nationwide scope and effect, and (2) EPA made and published such a finding when promulgating the Supplemental Rule.  *See* 81 Fed. Reg. at 89,875.  The Court's inquiry into scope and effect differs from its inquiry into applicability in that it focuses not on the rule itself, but rather on the "'determination' that the challenged action is 'based on.'" *See Texas*, 829 F.3d at 419, 422.  "These determinations are the justifications the agency gives for the action and they can be found in the agency's explanation of its action." *Id.* at 419.  Further, "[b]ecause the statute speaks of the determinations the action 'is based on,' the relevant determinations are those that lie at the core of the agency action." *Id.*; *see also* Merriam-Webster Online Dictionary (2017) (defining "scope" as the "extent of treatment, activity, or influence" and "effect" as "something that inevitably follows an antecedent (as a cause or agent)").

> As EPA stated in promulgating the Supplemental Rule:
>
> As explained in the June 30, 2016 final rule, at the core of that final action and this supplemental final action is the EPA's interpretation of the definitions of nonattainment, attainment and unclassifiable under section 107(d)(1) of the CAA, and its application of that interpretation to areas across the country.

81 Fed. Reg. at 89,875.  Using these nationwide interpretations—and the same five-factor test, analytical approach, and technical assessment considering available air quality modeling and monitoring data used by EPA in promulgating its first Round 2 air quality designations—EPA through the Supplemental Rule

9

established air quality designations for four additional areas in Texas. *Id.* at 89,871-73. That is, the Supplemental Rule is based on a series of determinations—regulatory interpretations and analytical and technical methods—used to promulgate all Round 2 Designations. The Supplemental Rule, therefore, rests not on "intensely factual determinations . . . related to the particularities of [] emissions sources in Texas," *see Texas*, 829 F.3d at 421, but rather on a common and nationwide approach used by EPA thus far to promulgate NAAQS Designations for 65 areas in 24 states. 81 Fed. Reg. 45,039; 81 Fed. Reg. 89,870.

EPA's Supplemental Rule is thus based on determinations of nationwide scope and effect. *See* H.R. Rep. No. 95-294, at 323-24 (1977) (describing a determination of nationwide scope or effect as one "which has scope or effect beyond a single judicial circuit"). Because EPA additionally made and published such a finding when promulgating the Supplemental Rule, 81 Fed. Reg. at 89,875, any petition for review of the Supplemental Rule "may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1).

### III. Dismissal or Transfer to the D.C. Circuit Reflects Congressional Intent and Serves Judicial Economy

Finally, review of the Supplemental Rule in the D.C. Circuit reflects congressional intent and promotes judicial economy. As this Court has recognized, "Congress intended the D.C. Circuit to review 'matters on which national uniformity is desirable.'" *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4

(5th Cir. Feb. 24, 2011). "Centralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results." *Id.* The Supplemental Rule is both "nationally applicable" and "based on a determination of nationwide scope and effect." Further, six petitions for review of the Final and Supplemental Rules have already been consolidated in the D.C. Circuit. Dismissal or transfer of the petitions for review at issue in this case to the D.C. Circuit therefore both promotes judicial economy and eliminates the risk of conflicting judgments. *See id.*

## CONCLUSION

For the foregoing reasons, the Sierra Club respectfully requests that the Court grant EPA's motion and dismiss the petitions for review in the consolidated proceeding before the Fifth Circuit. In the alternative, the Court should grant EPA's motion to transfer the petitions to the D.C. Circuit Court of Appeals.

Dated: April 13, 2017

Respectfully submitted,

*/s/ Mary Whittle*
Mary Whittle
Earthjustice
3904 Bonnell Drive
Austin, TX 78731
(512) 537-2791 (phone)
mwhittle@earthjustice.org

Thomas Cmar
Earthjustice
1101 Lake Street, Ste. 405B
Oak Park, IL 60304
(312) 257-9338 (phone)
tcmar@earthjustice.org

Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560 (phone)
(510) 208-3140 (facsimile)

*Counsel for Sierra Club*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel states that this response complies with FED. R. APP. P. 27(d)(2)(A) because it contains 2,594 words, excluding the parts exempted by FED. R. APP. P. 32(f), as counted by a word processing system and, therefore, is within the word limit. This response also complies with the typeface requirements of FED. R. APP. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

Dated: April 13, 2017

*/s/ Mary Whittle*
Mary Whittle

*Counsel for Sierra Club*

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: April 13, 2017

<u>/s/ Mary Whittle</u><br>
Mary Whittle<br><br>
<i>Counsel for Sierra Club</i>

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 13th day of April, 2017.

*/s/ Mary Whittle*
Mary Whittle

*Counsel for Sierra Club*
